# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LYON FINANCIAL SERVICES, INC., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No:   3:10-CV-00565-JPG-DGW |
| EDWARD RADETIC, | ) ) ) |
| Defendant, | ) ) |
| and | ) ) |
| THE VOGLER LAW FIRM, P.C., VINCENT D. VOGLER, ANTHONY K. REINER, | ) ) ) ) |
| Defendants/Third Party Plaintiffs, | ) ) ) |
| vs. | ) ) |
| CRAIG & CRAIG | ) ) |
| and | ) ) |
| MCKEOWN, FITZGERALD, ZOLLNER, BUCK, HUTCHINSON, & RUTTLE | ) ) ) |
| Third Party Defendants. | ) |

### DEFENDANTS THE VOGLER LAW FIRM, P.C., VINCENT D. VOGLER, AND ANTHONY K. REINER'S MOTION TO COMPEL

COME NOW Defendants, The Vogler Law Firm, P.C., Vincent D. Vogler, and Anthony K. Reiner, pursuant to Fed. R. Civ. P. 37(a)(1), and for their Motion to Compel, states as follows:

1. This is a malpractice claim that arises out of a suit brought against Plaintiff Lyon Financial Services, Inc. in Illinois state court. Lyon engaged The Vogler Law Firm

to defend it in the underlying case, but dismissed the firm five months before trial. Prior to dismissing Defendants, Lyon retained new counsel to try the underlying case, Craig & Craig and McKeown Fitzgerald, Zollner, Buck, Hutchinson, & Ruttle ("McKeown"). Craig & Craig and McKeown then filed a motion asking to substitute in as counsel for Lyon. During the pendency of that motion, both the Defendants and subsequent counsel briefly simultaneously represented Lyon in the underlying case. After the court granted the motion to substitute, and with its new counsel in place, Lyon lost the underlying trial. It then retained Stinson Morrison Hecker, LLP to file post-trial motions and to appeal. Lyon settled the underlying case during the appeal's pendency.

2. While its appeal of the underlying case was still pending, Lyon filed this legal malpractice suit against Defendants. It did not sue its trial and/or its appellate counsel in the underlying case. After having been singled out for suit by Lyon, Defendants filed a third party complaint against Lyon's trial counsel, McKeown and Craig & Craig. Defendants' third party complaint alleged that if Lyon lost the underlying trial due to negligence by its counsel, these firms caused and/or contributed to that adverse result.

3. Defendants have requested the production of Lyon's communications with the other counsel Lyon engaged to defend the underlying case it accuses Defendants of having lost that are related to the underlying case and subsequent counsel's work product on the underlying case. However, Lyon maintains that by filing the malpractice claim only against the Defendants, it preserved the privilege as to its other counsel in the underlying case.

4. Pursuant to the Local Rules and this Court's Order, Lyon and Defendants have conferred about their discovery dispute, but they were unable to resolve the dispute.

5. Illinois law governs questions of attorney-client privilege in this diversity case. FED. R. EVID. 501; *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1097 (7th Cir. 1987).

6. Defendants do not dispute that the attorney-client privilege originally protected at least some of Lyon's communications with it subsequent counsel in the underlying suit.

7. Following the vast majority of jurisdictions, the Illinois state courts find that a party waives the attorney-client privilege where it "voluntarily injects either a factual or legal issue into the case, the truthful resolution of which requires an examination of the confidential communications." *Lama v. Preskill*, 818 N.E.2d 443, 448 (Ill.App. 2nd Dist. 2004) *citing Pyramid Controls, Inc. v. Siemens Industrial Automations, Inc.,* 176 F.R.D. 269, 272 (N.D. Ill. 1997).

8. Here, Lyon waived the attorney-client privilege as to all of its counsel in the underlying case when it filed suit alleging that it lost that case because of Defendants' malpractice.

9. In *Pappas v. Holloway*, 787 P.2d 30 (Wash. 1990), the clients had several suits against them regarding cattle with brucellosis. Pappas defended some, but not all, of the cases and ultimately all cases were consolidated for trial. About a month beforehand, Pappas withdrew with consent of court. Like in the underlying case here, the client hired subsequent counsel to handle the trial and there was a brief overlap

3

between the representation provided by Pappas and that of the client's subsequent counsel. Pappas sued for fees and the client counterclaimed for legal malpractice saying trial preparation was below standard, there was no motion for summary judgment, etc. Pappas filed third party action against subsequent counsel. Employing the exact same test for waiver that the Illinois Appellate Court used in *Lama*, the Washington Supreme Court held there was waiver of privilege as to subsequent counsel because their actions were relevant to who was the cause of the adverse result and to what extent.

10. New York and other jurisdictions[1] followed suit, holding that it is well-established that "[a] client cannot bring an action against its former attorney for malpractice and at the same time protect from disclosure communications made with other lawyers **who also participated in the underlying litigation that gave rise to the client's claim**." (emphasis supplied) *See IMO Industries, Inc. v. Anderson Kill & Olick, P.C.*, 746 N.Y.S.2d 572 (N.Y. Sup. 2002) *quoting Pappas v. Holloway*, 787 P.2d 30, 36-37 (Wash. 1990).

---

[1] *See also Zabin v. Picciotto*, 896 N.E.2d 937, 955 (Mass. App. 2008) ("we agree with the cases from other jurisdictions relied upon by the trial judge holding that in cases (such as the present case) in which a client sues a former attorney for malpractice, the attorney-client privilege is waived as to communications with all attorneys involved in the underlying litigation in which the malpractice allegedly occurred"); *Tuccio v. LaPine*, 2007 WL 2365983 at * 3 (Conn. Super. Aug. 2, 2007) ("when a plaintiff sues a former attorney for malpractice claiming that the malpractice negatively affected ongoing or subsequent litigation, that plaintiff has waived the attorney-client privilege for all attorneys involved in that litigation")'
*Elia v. Pifer*, 977 P.2d 796, 803-04 (Ariz. App. 1999) ( upholding trial court's conclusion that client "had impliedly waived the attorney-client privilege as to communications with his later retained attorneys relating to the issue of attacks on or appeal from the decree"); *Rutgard v. Haynes*, 185 F.R.D. 596, 597-600 (S.D. Cal.1999)("when a plaintiff sued a former attorney for malpractice, that plaintiff waived the attorney-client privilege to all attorneys involved in the underlying litigation"); *Bieter Co. v. Blomquist*, 156 F.R.D. 173, 176-179 (D. Minn.1994) ("Because it would be unfair and highly prejudicial to permit the third-party plaintiffs to sue Dorsey for malpractice, yet simultaneously conceal documents which have a direct bearing on Dorsey's alleged malpractice, the Court finds that the third-party plaintiffs have waived their attorney-client privilege with Larkin as to the documents at issue");

11. A 1998 Illinois appellate court decision extended the above rule where the malpractice defendant wrote an allegedly defective contract that was in part the subject of a later suit. The court found that there was waiver of attorney-client communications with counsel retained by the client to try the later suit. *Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc.*, 703 N.E.2d 634 (Ill.App. 1st Dist. 1998), *aff'd in part, rev'd in part*, 727 N.E.2d 240 (2000). The malpractice claim in *Fischel* was that the defendant firm Fischel & Kahn had mis-drafted a contractual limit of liability provision to liability under new law regarding responsibility for art held on consignment. Years later, the client was sued when the art was damaged, and retained different counsel to defend it. The client settled the case after unsuccessfully raising the contract provision (written by Fischel & Kahn) as a defense. Citing to *Pappas*, the appellate court reasoned that whether the client had placed the communications with subsequent counsel at issue by filing the malpractice suit depended on "whether liability on the malpractice claims turns on the actions of subsequently retained counsel." *Id.* The appellate court found that it had because settlement of the subsequent case went to the amount of damages the client suffered.

12. The Illinois Supreme Court agreed with the appellate court's conceptual reasoning as to a malpractice plaintiff waiving the attorney-client privilege as to subsequent counsel, and did not challenge the rule in *Pappas.* Rather, the Illinois Supreme Court disagreed that the factual circumstance of *Fischel* would mean waiver under the *Pappas* rule because the factual situation in *Pappas* (which involved the subsequent lawyers taking over the handling of the same case as the malpractice defendants had handled) was materially different than the factual situation in *Fischel*

5

(wherein the malpractice was the advice and drafting of a contract), because in *Fischel* the later suit involving different counsel was totally and completely handled start to finish by the subsequent firm.  Hence, the situation was different than *Pappas* because in *Pappas* the alleged malpractice took place within the same case that subsequent counsel took over and finished (just as occurred here with subsequent counsel). *Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc.*, 727 N.E.2d 240 (2000).  The bottom line is that *Fischel* did not challenge or reject the *Pappas* rule, but found that *Fischel* involved a fundamentally different factual situation because in *Pappas* the malpractice suit was about bad advice and drafting of a contract, and subsequent counsel played no role in drafting that contract, and first began to represent plaintiff years after that contract was signed.

    13. In *Pappas*, subsequent counsel's acts were relevant to whether the client lost the underlying suit due to the defendant's acts or their own, and to what extent, and therefore, whether the client had any cause of action for malpractice.  The Illinois Supreme Court found that in contrast, the malpractice alleged in *Fischel* was factually different because it was complete when the client executed the allegedly mis-drafted contract, years before litigation on that contract handled by other counsel.  In contrast, the damage in mishandling a piece of litigation wherein the malpractice defendant began the representation in that litigation, but subsequently other lawyers got involved and finished the case (the *Pappas* situation as well as the situation here) is not complete **until** that litigation (handled first by the malpractice defendant and later by other counsel) is over.    That is why in a true *Pappas* situation, as here, there would be waiver.  It is noteworthy that the Illinois Supreme Court never claimed *Pappas* was not

6

the appropriate law to be followed, as if it did, it would undoubtedly have instead cited *Rhone Poulenc Rorer, Inc., v. Home Indemnity Co.*, 32 F.3d 861, 863 (3rd Cir. 1994) and said it was adopting the restrictive minority position expressed in that case.

14. *Fischel*, *IMO* and *Pappas* establish a clear dividing line as to which subsequent counsel the filing of a malpractice suit waives the attorney-client privilege. If subsequent counsel represented the plaintiff in the **same** underlying suit, there is a waiver. If subsequent counsel represented the client in a **different** suit or client matter, there is no waiver. Like the malpractice plaintiffs in *IMO* and *Pappas,* Lyon filed this malpractice suit against one of several counsel who represented it in the **same** underlying suit. Therefore, there is "an implied waiver of the attorney-client privilege as to all the attorneys who were involved in defending the client in the underlying litigation." *Pappas*, 787 P.2d at 37.

15. In sum, the Illinois Supreme Court, in line with the vast majority of jurisdictions to address the issue, cited to the **Pappas** test for when waiver occurred with approval. It simply found the facts present in the case distinguishable and therefore, the outcome under the same test different. The Illinois Supreme Court did not mention much less adopt the more restrictive minority position for when waiver occurs that holds that a waiver only occur when a party actually relies on privileged documents to prove their case, which the Third Circuit and small minority of other federal courts have adopted. See *Rhone Poulenc Rorer, Inc., v. Home Indemnity Co.*, 32 F.3d 861, 863 (3rd Cir. 1994). In fact, Illinois appellate courts post-*Fischel* have continued to employ the same test used in *Pappas*, which is that a waiver occurs whenever a party "voluntarily injects either a factual or legal issue into the case, the

truthful resolution of which requires an examination of the confidential communications." *Lama v. Preskill*, 818 N.E.2d 443, 448 (Ill.App. 2nd Dist. 2004).

16. Therefore, a waiver exists here because, as in *Pappas*, to prevail in its malpractice claim, Lyon has to prove that Defendants' acts or omissions caused the adverse result in the underlying case, even though Defendants did not represent Lyon through to verdict. This necessarily involves resolving the issue of whether and to what extent the un-sued successor counsel's acts caused the loss in that suit or broke any causal link between Defendants and the adverse result.

17. Hence, "the decisions, actions and duties of the other attorneys involved in the [same] underlying litigation bec[o]me central to determining the legal and factual issues of the case." *Pappas*, 787 P.2d at 37. Evidence of the foregoing will necessarily involve information communicated between Lyon and its successor counsel. *Id.* Defendants' need for such information to adequately defend themselves is heightened in this case because they were not the attorneys who actually tried and lost the underlying case, nor were they the counsel who appealed the trial loss and eventually settled the appeal. *Id.*

18. If Defendants are prevented access to that information, relevant to whether subsequent counsel actually caused the complained of acts, Lyon would be able to use the attorney-client privilege as a sword to prosecute their malpractice action, which is plainly improper under Illinois law. *Latuga v. Hooters, Inc.*, 1994 WL 329910, *1 (N.D. Ill. 1994) ("Defendants correctly assert that the attorney-client privilege cannot be used as both a sword and a shield. Where the plaintiff puts a matter in issue, he

8

cannot invoke the attorney-client privilege to prevent the defendant from obtaining information necessary to his defense.")

19. The mere fact that other lawyers and law firms were also involved in defending Lyon in the same case as Defendants and ultimately took that case to verdict and appeal is enough under *Pappas* (and the vast majority of states who follow the same rule) to cause waiver of attorney-client privilege, but Lyon here has taken it a step farther by actually pleading issues that make the files of subsequent counsel for Lyon in the same matter even more relevant. For example, among the allegations Lyon makes in its First Amended Complaint are that:

(1) "Defendants wholly failed to produce documents provided by Lyon. On the eve of trial, Defendants' failure led to devastating sanctions against Lyon";

(2) "[i]n February 2009, Lyon's substitute counsel provided Christopher Rural with a list of trial exhibits which included documents counsel had received from Defendants. Because these documents had long since been provided to Defendants, Lyon and its new counsel believed Defendants had likewise produced those documents to Christopher Rural. But Defendants had not produced the documents at issue";

(3) as a result, "the trial court barred Lyon from introducing an (sic) evidence of exhibits that had not previously been produced by Defendants…."; and

(4) therefore, "Lyon had no chance of success when the *Christopher Rural* lawsuit went to trial. Defendants' misconduct directly caused Lyon to be found liable and to be assessed punitive damages."

20. Defendants have a right to contest Lyon's allegations that it and subsequent counsel did not know about the discovery allegedly not produced by Defendants, which Lyon alleges resulted in a sanction order that caused it to lose the underlying trial. Defendants can only contest Lyon's claim that it and subsequent counsel were ignorant of the fact that the discovery had not been produced if it is given

9

the right to see what Lyon and its subsequent counsel communicated to each other about the documents.

21. These allegations provide a concrete example of why litigants like Lyon waive the attorney-client privilege when they put "at issue" allegations and claims that can only be tested by invasion of the privilege. In one paradigm example, an Illinois appellate court dealt with a malpractice plaintiff who missed the statute of limitations in suing a surgeon. To avoid the statute of limitation, the plaintiff pled that she was not aware that she had been injured until long after the surgery. However, the surgeon found that plaintiff's husband had spoken with a personal injury lawyer shortly after the surgery. The court held that plaintiff had put her ignorance of injury "at issue," and thus impliedly waived any privilege that would otherwise have protected communications between her husband and the personal injury lawyer. *Lama v. Preskill*, 818 N.E.2d 443 (Ill.App. 2nd Dist. 2004).

22. Another case highlights the reason "at issue" waiver occurs when there is a question of whose negligence caused an adverse result. In *Chin v. Rogoff & Co.*, 2008 WL 2073934, at *6-7 (S.D.N.Y. May 8, 2008), plaintiffs sued their accountant for malpractice – alleging that the accountant had provided bad advice about whether to sign a release in connection with the plaintiffs' sale of a company. The accountant sought documents from the law firm of Akin Gump, which had also provided advice to plaintiffs at the time they sold their company. Therefore, the accountant and Akin Gump were both involved in giving advice regarding the same sale, which is the transaction equivalent to Pappas. The accountant argued that the plaintiffs had placed Akin Gump's legal advice "at issue" by arguing that they relied on the accountant's advice in

signing the release. The court agreed with the accountant, noting that if "Akin Gump was advising the plaintiffs not to sign the release even after and despite [the accountant's] determination that there would be no adverse consequence to the plaintiffs, then the existence of any causal link between [the accountant's] advice and the plaintiffs' damages can only be assessed by invading the privilege and examining the nature of the advice that Akin Gump gave to plaintiffs." *Id.*

23. Here, Defendants have a right to establish that there is no causal link between their alleged failure to produce documents in the underlying case and the eventual complained of sanction order. Such a link does not exist if Lyon and/or its subsequent counsel knew and/or should have known that Defendants had not produced the discovery, but still waited months prior to producing the documents. Therefore, Plaintiff's claim of ignorance requires granting the Defendants the chance to contest this claim, which requires access to Lyon's communications with its subsequently retained counsel.

24. The above is just one example of why Lyon's communications with its subsequently retained counsel in the underlying case have been placed at issue by this malpractice suit, going all the way up to the question of whether Lyon had to settle the appeal of the underlying case because of these Defendants' malpractice or for the economic reason that it could attempt to recoup the settlement payment from these Defendants.

25. For the above given reasons, all communications between Lyon and its successor counsel that were exchanged to further the defense of the underlying case

11

are discoverable, up through and including communications regarding the eventual settlement of the underlying case.

26. Finding a waiver here is no different than a medical malpractice case where the plaintiff needs to establish a causal link between the defendant's treatment and the claimed adverse result. Hence the records of subsequent health care providers dealing with the same medical condition are relevant and the physician/patient privilege as to them is waived because those records bear on the question of whether any other health care provider caused and/or contributed to the adverse result. Like with the attorney-client privilege, a doctor normally cannot disclose treatment information. However, courts hold that a patient waives doctor-patient confidentiality by filing a medical malpractice suit not only as to the defendant doctor, but also to his or her subsequent treating doctors for that same condition, who are not defendants but potentially have relevant information. *Greene v. Rogers*, 498 N.E.2d 867, 873 (Ill.App. 3rd Dist. 1986).

27. Insofar as Lyon argues certain documents contained in subsequent counsel's file are subject to work-product protection, federal law governs the scope and application of the work product doctrine. *Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269, 276 (N.D. Ill. 1997).

28. Under federal law, "[A party will] waive protection under the work-product doctrine to the same extent that is has waived its attorney-client privilege by putting at issue the discussions between itself and its attorney and the advice [the party] received based on those discussions." *Id.*

WHEREFORE, Defendants respectfully request that this Court compel production of all communications Plaintiff Lyon Financial Services, Inc. had with its counsel in the underlying case and the appeal thereof, as well as the files of these subsequently retained counsel, and for any further and other relief the Court deems just and necessary under the circumstances.

Respectfully submitted,

BAKER, STERCHI, COWDEN & RICE, L.L.C.


*/s/ Brent W. Baldwin*
Brent W. Baldwin, #00100501
M. Brendhan Flynn, #MO58017 (pro hac vice)
1010 Market Street - Suite 950
St. Louis, MO 63101
Telephone: (314) 231-2925
Facsimile: (314) 231-4857
E-mail: baldwin@bscr-law.com

**Lead Counsel for Defendants The Vogler Law Firm, P.C., Vincent D. Vogler, and Anthony K. Reiner**

## CERTIFICATE OF SERVICE

I hereby certify that on this **29th** day of **July**, **2011**, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all participating parties of record. A copy of the foregoing document was served via other means on all non-participating parties as stated below.

Steven M. Sherman
**Thompson Coburn, LLP**
One US Bank Plaza
St. Louis, MO 63101

**Attorney for Plaintiff**

Richard Korn
**Fox Galvin, LLC**
One Memorial Drive - 12th Floor
St. Louis, MO 63102

**Attorney for Third Party Defendant Craig & Craig**

**SERVED VIA U.S. MAIL**

Edward Radetic
1353 Clarkson Pines
St. Louis, MO 63011

**Pro Se Defendant**

Michael T. Kokal
Heyl, Royster, Voelker & Allen
1 N.Old State Capitol Plaza - Suite 575
PO Box 1687
Springfield, IL 62705

**Attorney for Third Party Defendant McKeown, Fitzgerald, Zollner, Buck, Hutchinson & Ruttle**

*/s/ Brent W. Baldwin*

14