IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LYON FINANCIAL SERVICES, INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| THE VOGLER LAW FIRM, P.C., et al., | ) Case No. 10-cv-565-JPG-DGW |
| Defendants, | ) |
| v. | ) |
| CRAIG & CRAIG and McKEOWN, FITZGERALD, ZOLLNER, BUCK, HUTCHINSON & RUTTLE, | ) |
| Third Party Defendants. | ) |

**ORDER**

Before the Court is a Motion to Compel filed by Defendants The Vogler Law Firm, P.C., Vincent D. Vogler, and Anthony K. Reiner ("Vogler Defendants") (Doc. 74). The Vogler Defendants seek to compel production of attorney-client communications and work product between the Plaintiff, Lyon Financial Services, Inc., ("Lyon"), and its replacement counsel, Craig & Craig ("Craig") and McKeown, Fitzgerald, Zollner, Buck, Hutchinson & Ruttle, ("McKeown"); and between Lyon and Stinson Morrison Hecker, LLP ("Stinson"), Lyon's appellate counsel, who are not a party to this suit (Doc. 74). For the reasons stated below, Defendants' Motion to Compel is **GRANTED**. Plaintiff is given until **September 16, 2011**, to produce all attorney-client communications and work product between Lyon and Craig and McKeown, and between Lyon and Stinson. Failure to comply with this order may result in sanctions.

**BACKGROUND**

The Vogler Defendants originally represented Lyon in *Christopher Greater Area Rural Health Planning Corp. v. Lyon Financial Serv., Inc., et al.*, Case No. 5-L-8, an action filed in the Circuit Court of the Second Judicial Circuit of Franklin, County, Illinois. Due to alleged professional misconduct during discovery, Lyon dismissed the Vogler Defendants as counsel and retained Craig and McKeown as counsel for trial. A jury returned a verdict against Plaintiff for $67,926,728.31. After trial, Lyon dismissed Craig and McKeown as counsel and retained Stinson for the appeal. The case settled while on appeal (Docs. 73 and 74).

Plaintiff Lyon filed the instant action against the Vogler Defendants alleging legal malpractice and professional negligence, breach of fiduciary duty, and breach of contract (Doc. 2). The Vogler Defendants filed a third-party complaint against Craig and McKeown seeking to indemnify them for contribution in the malpractice and professional negligence claims (Doc. 41). The Vogler Defendants now seek the production of attorney-client communications and work product between Lyon and Craig and McKeown, and between Lyon and Stinson.

**DISCUSSION**

*Legal Standards*

Under Federal Rule of Civil Procedure 37, a litigant may seek the specific production of documents by "mov[ing] for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(B). To succeed on a cause of action for legal malpractice under Illinois law, a party must prove: "(1) an attorney-client relationship that establishes a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause establishing that "but for" the attorney's malpractice, plaintiff would have

2

prevailed in the underlying action; and (4) actual damages." *Preferred Pers. Servs., Inc. v. Meltzer, Purtill & Stelle, LLC*, 902 N.E.2d 146, 151 (Ill. App. Ct. 2009). *See also Union Planters Bank, N.A. v. Thompson Coburn LLP*, 935 N.E.2d 998, 1021 (Ill. App. Ct. 2010) (noting that proximate cause is "essentially a question of foreseeability: a negligent act is a proximate cause of an injury if the injury is of a type which a reasonable man would see as a likely result of his conduct.") (internal citations omitted); *Fox v. Seiden*, 887 N.E.2d 736, 743 (Ill. App. Ct. 2008) (noting that "actual damages" are proven when "the client can demonstrate that he has sustained a monetary loss as the result of some negligent act on the lawyer's part"); *First Nat'l Bank of LaGrange v. Lowrey*, 872 N.E.2d 447, 469 (Ill. App. Ct. 2007) (noting that proximate cause "in a legal malpractice case is generally a factual issue to be decided by the trier of fact."). Generally, Illinois courts have acknowledged that "cause[s] of action for legal malpractice will rarely accrue prior to the entry of an adverse judgment, settlement, or dismissal of the underlying action in which plaintiff has become entangled due to the purportedly negligent advice of his attorney." *Lucey v. Law Offices of Pretzel & Stouffer, Chartered*, 703 N.E.2d 473, 479 (Ill. App. Ct. 1998). Moreover, settlements made by successor counsel do not preclude causes of action for legal malpractice against prior counsel so long as the "plaintiff can show that she settled for a lesser amount than she could reasonably expect absent the malpractice." *Weisman v. Schiller, Ducanto & Fleck, Ltd.*, 856 N.E.2d 1124, 1141 (Ill. App. Ct. 2006).

*Attorney-Client Privilege*

The first issue before the Court is whether the Vogler Defendants can compel the production of attorney-client communications between Lyon and Craig and McKeown, and between Lyon and Stinson. The attorney-client privilege has been defined as: "the protection that

3

applicable law provides for confidential attorney-client communications." FED. R. EVID. 502(g)(1). Thus, in this civil action, Illinois state law governs the attorney-client privilege. FED. R. EVID. 501; *see also Caremark, Inc. v. Affiliated Computer Serv., Inc.*, 192 F.R.D. 263, 265 (N.D. Ill. 2000). The common law doctrine is designed "to encourage and promote full and frank consultation between a client and legal advisor by removing the fear of compelled disclosure of information." *Consol. Coal Co. v. Bucyrus-Erie Co.*, 432 N.E.2d 250, 256-57 (Ill. 1982) (citations omitted) (noting that the attorney-client privilege "ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle."). Additionally, the attorney-client privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

This, however, does not mean that the privilege is absolute. *See Western States Ins. Co. v. O'Hara*, 828 N.E.2d 842, 847 (Ill. App. 2005). In fact, the state of Illinois encourages such disclosures in order to "ascertain[] that truth which is essential to the proper disposition of a lawsuit." *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 327 (Ill. 1991) (citing *Monier v. Chamberlain*, 221 N.E.2d 410, 416 (Ill. 1966)). Under certain circumstances, the attorney-client privilege may be waived either expressly or impliedly. *See Lama v. Preskill*, 818 N.E.2d 443, 448 (Ill. App. Ct. 2004). An implied waiver results from "a party voluntarily inject[ing] either a factual or legal issue into the case, the truthful resolution of which requires an examination of the confidential communications." *Id.* (citing *Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc., et al.*, 176 F.R.D. 269, 272 (N.D. Ill. 1997)).

District courts in this circuit have held that in order to implicitly waive the attorney-client privilege, a party "must affirmatively put at issue the specific communication, document or information to which the privilege attaches." *Dexia Credit Local v. Rogan,* 231 F.R.D. 268, 275 (N.D. Ill. 2004). The Third Circuit Court of Appeals has found that placing a privileged communication "at issue" occurs when "the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994).

In *Fishel & Kahn, Ltd. v. van Straaten Gallery, Inc.*, 727 N.E.2d 240, 242 (Ill. 2000), a law firm sued a former client for attorneys' fees. The former client then filed a counterclaim for legal malpractice. *Id.* at 243. Seeking to aid its affirmative defense to that claim, the law firm alleged that the former client implicitly waived the attorney-client privilege between itself and subsequent counsel by placing their communications "at issue" as a result of filing the counterclaim for legal malpractice. *Id.* Reasoning that the former client had not waived the attorney-client privilege, the court in *Fishel & Kahn* noted that the law firm's alleged malpractice was "complete" prior to its former client hiring new counsel or the filing of that underlying action.[1] *Id.* at 245.

Plaintiff Lyon contends it did not implicitly waive attorney-client privilege when it filed this action. First, Lyon argues it will not be utilizing any attorney-client communications between itself and subsequent counsel to prove its allegations against Defendants, thus it has not placed those communications "at issue." Lyon emphasizes that all privileged documents involving representation by the Vogler Defendants before trial have been produced (Doc. 73, p. 6; Doc. 73-1; Doc. 73-2). Second, Lyon argues that the alleged legal malpractice occurred "prior to and

---

[1] The *Fishel & Kahn* court also noted that simultaneous representation never occurred, which is disputed in this case. *Id.*

independently from" subsequent counsel's representation.  Thus culpability for the damages is attributable only to Defendants (Doc. 73, pp. 4, 6).

The Vogler Defendants contend that they cannot effectively defend against Lyon's alleged legal malpractice claim without the privileged communications between Lyon and subsequent counsel, who may be liable for some loss (Doc. 74, p. 2).

Lyon's arguments against waiver fall short for several reasons. First, Lyon's complaint seeks damages for the amount of the verdict rendered after trial and after the Vogler Defendants had ceased their representation of Lyon.  If Lyon were seeking to prove the cause of damages that occurred prior to trial, and only during the Vogler Defendants' representation, then attorney-client communications could arguably be irrelevant.  Because, however, the specific party, if any, that caused Lyon's trial loss remains unresolved, Lyon has implicitly placed its attorney-client communications with subsequent counsel "at issue" by introducing a "factual or legal issue in [this] case" that must be determined by invading the attorney-client privilege. *See Lama*, 818 N.E.2d at 448.

Second, Lyon has argued that the Vogler Defendants' negligence—and their negligence alone—"hamstrung" subsequent counsel with "no chance" to alter the eventual outcome at trial (Doc. 47; Doc. 73). But, implicit within Lyon's argument is the fact that the alleged legal malpractice of which it accuses the Vogler Defendants—or at least the effects thereof—must have continued beyond the duration of Defendants' representation. This contradicts Lyon's contention that Defendants' alleged legal malpractice was "prior to and independent[] from" subsequent counsel's involvement (Doc. 73). Whether it was day-one or day-one hundred of trial, subsequent counsel would have been affected by the Vogler Defendants' alleged legal malpractice. Thus, this

case is distinguished from *Fishel & Kahn* because that court held that the legal malpractice had already ceased well before subsequent counsel was retained. *See Fishel & Kahn*, 727 N.E.2d at 245.

Finally, Lyon's arguments fall short because of fundamental fairness. Unlike in *Fishel & Kahn*, where the court noted that the attorney-client communications which the law firm sought were not "vital to its defense" and would not prevent the law firm from challenging its former client's proffered evidence, if this Court were to accept Lyon's arguments by denying the motion to compel, Defendants would be effectively precluded from challenging the causation and actual damages prongs for legal malpractice. *Id.* Moreover, this Court will not permit Plaintiff to use the attorney-client privilege as both a "sword" to strengthen its legal malpractice claim and as a "shield" to protect its legal malpractice claim from affirmative defenses. *See Pappas*, 787 P.2d at 36; *see also Latuga v. Hooters*, No. 93 C 7709, 1994 WL 329910, at *1 (N.D. Ill. July 8, 1994) (noting that the "the attorney-client privilege cannot be used as both a sword and a shield."). Therefore, because Lyon's legal malpractice claim has placed its attorney-client communications with subsequent counsel "at issue," it must produce these documents to Defendants.

***Work-Product Doctrine***

The second issue before the Court is whether the Vogler Defendants can compel the production of work-product material created by Lyon, Craig, McKeown, and Stinson. The work-product doctrine provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." FED. R. CIV. P. 26(b)(3). Unlike the attorney-client privilege, federal law governs the work-product doctrine. *Id.* The Supreme Court has held that work-product protections can be

waived by a "showing of necessity or any indication or claim that denial of such production would unduly prejudice the preparation of petitioner's case or cause him any hardship or injustice." *See Hickman v. Taylor*, 329 U.S. 495, 509 (1947) (noting that work-product may include: "memoranda, briefs, communications . . . other writings prepared by counsel for his own use . . . attorney's mental impressions, conclusions, opinions or legal theories.").

To determine whether to waive the work-product protection, courts generally apply the same "at issue" test used in attorney-client privilege scenarios. *See Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc., et al.*, 176 F.R.D. 269, 276 (N.D. Ill. 1997) (noting that "the scope of discovery for work-product materials will be identical to the above rulings concerning the attorney-client privilege."). Because this Court has found that Lyon waived its attorney-client privilege as to communications between Lyon and subsequent counsel, this Court also finds that Lyon has waived its work-product protection to the extent that the material relates to the underlying action.

## CONCLUSION

Defendants' Motion to Compel is **GRANTED**. Plaintiff is given until **September 16, 2011**, to produce all attorney-client communications between Plaintiff and Third Party Defendants and between Plaintiff and Appellate Counsel. Failure to comply with this order may result in sanctions.

**IT IS SO ORDERED.**

**DATED: September 2, 2011**

                                                  **DONALD G. WILKERSON**
                                                  **United States Magistrate Judge**